Roberto Moco v. Pamela Bondi, U.S. Attorney General Robert Andrew Nzinga v. Attorney General Robert Moco v. Pamela Bondi, We know from arrest records, indictments, the nature of his interactions with law enforcement, his violence towards his former living girlfriend. So we know from whether it be his 440 motion filings, which the petitioner points out the pro se, but there's sworn affidavits filed to the State of New York. We know that he violated protection order issued to protect her. So the record in this case, whether it's arrest record, indictment, conviction documents, PSI, his 440 motions, affidavits, 440 motions, memorandum, everything points to the petitioner being removable and the record does not compel reversal. I'll touch briefly, Your Honor, on the stalking issue. Petitioner, first of all, tries to argue that the government – that the board overlooked – excuse me, the immigration judge overlooked evidence. First, that issue is not exhaustion – exhausted. Petitioner's reply brief provides a string cite to the record. I admit as a litigator, Your Honor, the moment I see a string cite to record with no explanations, I look at everyone and I ask, where is it that you said the immigration judge overlooked evidence? All I'd ask that the court do is look at them and see that no point did they say that. But at the end of the day, Your Honor, briefly, the 2013 – November – September 2013 stalking is exactly in the indictment. It's the arrest report. That is the conduct that led to the conviction, Your Honor. So I'd ask that you deny the petition. All right. Thank you. Thank you, Your Honor. So there is an – let me just ask this. Sorry. I'm just trying to get some of these facts down. I think there was an indictment – I understand. – by a detective in August of 2014. Correct. In which he references a protective order issued by Justice Kinderman, which was in place through March of 2015, started in March of 2014. And apparently it directs Boco, quote, to, among other things, refrain from all contact with the informant, the woman. And there was clearly contact. So that would indicate some substance to what the actual protective order says. But it's a detective's affidavit. We don't have the order itself. Well, Your Honor, if I may briefly, petitioner relies heavily on some Seventh Circuit case and obviously this court in Alvarez. Again, the nature of the circumstance-specific analysis means we're looking at things like rest records. We're looking at things like indictments. We're looking at PSIs. We're looking at a host of documents. The Congress didn't intend in removing this from the categorical analysis to sort of demand the agency only rely on certain documents. So, Your Honor, when you really look at these hosts of documents, including that arrest report on 385 to provide the citation, the record can't compel reversal here. We hear too many criminal cases where it really matters what's in the indictment. If I may, Your Honor, I think I understand. You know, petitioner cites a criminal case where it talks about the indictment not being evidentiary. But, of course, it says, that case actually says the indictment's standing alone. But we are in a civil context, and this is where Congress mandated circumstance-specific analysis. It's different. Okay. Thank you. Thank you. So, the government's position is that what we're looking at here is a broad category of documents is what the government's position is now on this appeal. But it wasn't the approach taken by the immigration judge and the BIA to do the type of analysis that's now being promoted. Specifically, and I do invite the Court to look at the immigration judge's decision, 1227A2E2, as this Court notes, has two requirements. The first is that in order to find a violation of it, there needs to be a – in order to find it applicable, there needs to be a violation of the protective order. And then the second determination is whether that violation was directed at an individual who was covered by the protective order. And in reaching the determination, the immigration judge did not look at any of these other documents that the government is now relying on. Rather, it looked purely to the fact that there was a conviction to reach a determination. Is there anything in these other documents that's going to indicate anything in your favor? Well, I think, Your Honor, you were hitting on this before, and it's the fact that there is another protective order that runs from 3-12-2014 to 3-11-2015. Yeah. That may be the protective order at issue. That's not the protective order that the immigration judge and the BIA reviewed and found applicable here. And this is the problem with not doing a case-specific approach and just relying on this. It's this type of failure to appropriately analyze and determine whether a satisfaction of the statute has occurred that makes this case appropriate for remand, that we think this case should be remanded back down to the IJ for a full determination and a full review of this record. You know, the order in which we might remand – if we were to remand it, if we did a summary order to remand it, I mean, no likelihood of an opinion. The summary order could lay out the various problems associated with this, and the IJ could just look at this and say, oh, okay, so I have to really focus on the March 14th protective order. And we have some sufficient – maybe arguably sufficient statements by a detective about that, the contents of that order, and point out other little problems that have arisen. And then they – then we're – you know, where are we? I mean, you know, ultimately, I don't see any hope for your plan, frankly, if that happens. Now, you may see that maybe it could go back and there could be a finding. Apart from just the judicial exercise of setting it back, there could be something in the substance in what the court might – the immigration judge might come up with that could help you. But I don't – maybe you could help me on that. I mean, I just don't see it. And I think that – I recognize my time, if I may. Yeah. I think that's exactly the difficulty we have, is that when you don't have a full evidentiary record – and admittedly, you know, we've been parachuted into this case at the appellate level. But when you don't have the full administrative record, you don't have the full development of these facts to figure out which protective order it is, which individual that was directed to, which individual the behavior was directed to, it becomes hard for an attorney to craft arguments as to why relief may be entitled to his client. And that's the problem we have here. The failure to fully develop this has resulted in a circumstance where I don't think we can answer that question as to what arguments there are at this time. You were appointed, right, to be counsel here? Yeah. We are pro bono counsel. We're on the pro bono panel for the circuit. Well, I would just – thank you for your work. You obviously dug into this in a very deep way and did a really excellent job in presenting your client's case. Thank you, Your Honor. And if I may take a moment to actually thank the team who helped me work on this, Wynn and Jordan. I assume that you can pass it along to the team. Catherine DeFranco here and Paris Moore, who couldn't be here, but they did the yeoman's work of getting this together. Great. All right. Thank you. Thank you, Your Honor. We will take this case under advisement.